AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

**SEALED**

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| DAVID LEIDERMANN, JAMES REJA, and ERIC THIBODO | ) | 8:23MJ203 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 1, 2000 to August 31, 2020 in the county of Douglas in the District of Nebraska, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Did knowingly and intentionally combine, conspire, confederate, and agree together and with other person(s) to distribute and possess with intent to distribute 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance. |

This criminal complaint is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Craig Allrich, HSI
*Printed name and title*

Sworn to before me by telephone or other reliable electronic means.

Date: 4-11-23

_____
*Judge's signature*

City and state: Omaha, Nebraska    SUSAN M. BAZIS, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

AFFIDAVIT FOR CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Craig Allrich, being first duly sworn, hereby depose and state as follows:

1.I am a Special Agent with Homeland Security Investigations (HSI). I have been a Special Agent with HSI, formerly U.S. Immigration and Customs Enforcement, since April 2009. Prior to that, I served as a Military Intelligence Captain in the United States Army from 1998 to 2009. I am currently assigned to the HSI Office in Omaha, Nebraska. In connection with my duties and responsibilities as a federal law enforcement officer I have been involved in numerous investigations of individuals who derive substantial income from the importation, manufacture, distribution and sale of illegal controlled substances. I have extensive experience in the execution of search and arrest warrants, debriefing of defendants, informants, witnesses and other persons who have personal knowledge of the amassing, spending, converting, transporting, distribution, laundering, and concealing of proceeds of controlled substances trafficking. These investigations have resulted in the arrest and conviction of individual who have used communications facilities to facilitate drug trafficking activity, and of individuals who laundered proceeds derived from drug trafficking activity. These investigations have resulted in seizures of illegal drugs and proceeds derived from drug trafficking activity. These investigations have also required the examination of telephone records, financial records, drug ledgers and other documents.

2.Based on my training and experience and based upon interviews with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways drug traffickers conduct their business. My familiarity includes: the means and methods drug traffickers use to import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I also am familiar with how drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, using carriers to transport currency and proceeds, and using third parties to purchase or hold title to assets.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4. On September 12, 2019, the Lancaster County Sheriff's Office (LSO) Interdiction Unit arrested Tyler Gooch (W/M 5-20-1980) at NW 84 & HWY 34, Lincoln, Lancaster County, Nebraska, after the vehicle he was driving was found containing 90 pounds of marijuana, 3,001 THC vape cartridges, and 30 pounds of marijuana shatter. The investigation was continued by the Homeland Security Investigations Major Crimes Financial Task Force (MCFTF) made up of Lancaster County Sheriff's Office Investigators, Nebraska State Patrol Investigators, and Agents from the Department of Homeland Security Investigations, Omaha Field Office. Through the investigation, it was later determined that the controlled substances Gooch was in possession of were going to be delivered to a cooperating defendant (CD-1) of known reliability in eastern Nebraska.

5. On January 19, 2020, law enforcement surveillance observed CD-1 meet with two males in a gold Ford Sport Trac outside of a Papillion NE residence, where the Ford Sport Trac was observed parking inside the garage of the residence. Shortly thereafter, surveillance officers followed the Ford Sport Trac after it departed the Papillion residence.

6. After leaving the Papillion residence, MCFTF Investigators observed the gold Ford Sport Trac traveling eastbound on Interstate 80 near mile marker 448 in Omaha, Douglas County, Nebraska. Investigators observed the Ford Sport Trac fail to signal a lane change and following another vehicle too closely.

7. A traffic stop was initiated on the gold Ford Sport Trac and contact was made with the two male occupants. The driver was identified as Frederick ROBEY (W/M 4-28-1976) and the passenger was identified as Eric Osborne THIBODO (W/M 5-31-1968). Consent to search the vehicle was denied so a State of Nebraska certified K9 was deployed and alerted and indicated to the odor of narcotics emitting from within the vehicle. A probable cause search of the Ford Sport Trac was conducted and $200,403.00 in US Currency was found in a black plastic trash bag. The US Currency was rubber

banded together in bundles and had a strong odor of marijuana emitting from them and from the bag. The US Currency pretested positive for THC. Officers also seized multiple phones from ROBEY and THIBODO.

8. Pursuant to a signed Lancaster County Court search warrant, investigators analyzed THIBODO's iPhone X using telephone number 213-808-4416 and his eTalk phone using telephone number 786-526-4267 that were seized during the January 19, 2020, traffic stop. During the phone analysis, investigators observed THIBODO's phone to have a messaging application named 'Wickr.' The Wickr application is known to investigators to be encrypted and is commonly used by persons to communicate covertly. Through previous training and experience, your Affiant knows persons involved in conspiracies often utilize encrypted cell phone applications to anonymize their identity when communicating with co-conspirators.

9. An analysis of the cellular telephone devices seized from THIBODO revealed that CD-1, TARGET-4, and THIBODO communicated via cellular telephone and Wicker App. During these conversations, TARGET-4 used a name "EVANDER707". During the analysis of THIBODO'S personal cellular telephone 213-808-4416 and CD-1 cellular telephone, it was revealed that, THIBODO, TARGET-4, and CD-1 were discussing the delivery of narcotics from Chicago, Illinois to Omaha, Nebraska.

10. Concurrent to the stop of the Ford Sport Trac, a search warrant was executed at the Papillion, NE residence the Ford Sport Trac was seen leaving. Pursuant to the search warrant, Investigators seized approximately 111 pounds of marijuana, 32 pounds of THC shatter, and 5 pounds of THC oil from within the Papillion residence. CD-1was arrested at the Papillion residence and his phone was seized. A search of his phone revealed that between January 16, 2020, through January 19, 2020, CD-1 and TARGET-4 discussed, on SMS messages, the purchase and delivery of narcotics from TARGET-4 to CD-1 in Omaha, Nebraska. TARGET-4 messaged CD-1 that a "Really good friend of mine will be supervising this trip to make sure it goes well. Please take good care of him. Need him to be safe. Big part of my operation."

11. HSI interviewed CD-1 after his arrest who stated that THIBODO was the subject who delivered the approximately 111 pounds of marijuana, 32 pounds of THC shatter, and 5 pounds of THC oil on January 19, 2020. CD-1 stated that he had ordered the marijuana products from TARGET-4. CD-1 identified pictures of THIBODO. CD-1 also admitted that the narcotics found in Tyler Gooch's possession on September 12, 2019, was being delivered to him.

12. Through the examination of THIBODO's seized phone, HSI was able to identify several drug messages to different phone numbers of other coconspirators. On January 6, 2020, "Katie" with phone number 323-723-3287 sent a group of messages to THIBODO asking if he was turning anything in this week and making the comment that they keep missing each other. Katie went on to send the text, "Lincoln, Nebraska correct". THIBODO responded, "Yes dear." THIBODO continued to discuss "paper" pickup with Katie through several text messages. Based on your affiant's training and experience, these discussions are code for the delivery of narcotics and pick up of currency.

13. In February 2020, LSO subpoenaed phone records for THIBODO's telephone number 213-808-4416. An analysis of the records determined that after the MCFTF seized THIBODO's Apple Iphone X using 213-808-4416, THIBODO purchased an iPhone 11 Pro with IMEI number 353234103868939, and continued using number 213-808-4416.

14. On March 24, 2020, pursuant to a Lancaster County, Nebraska warrant, electronic surveillance was established on THIBODO's Apple iPhone 11 Pro using phone number 213-808-4416, and revealed that THIBODO traveled to the New York City metro area. Electronic surveillance placed THIBODO's phone near a warehouse located at 5819 58th Road, Maspeth, New York that was being leased by the company FastBox, LLC.

15. Research on the company FastBox LLC revealed it to have office warehouses in New York, New York, Nashville, Tennessee, Laurel, Maryland, Cincinnati, Ohio, North Hollywood, California, Chicago, Illinois, and Miramar, Florida. Additional research has revealed limited information about the business FastBox LLC. FastBox LLC advertises on their website, (https://www.goFastBox.com/) that FastBox LLC was born to provide an alternative to traditional portable storage moving solutions. In late March 2023, 24 hours electronic surveillance was established on multiple FastBox warehouses, to include Maspeth, New York and North Hollywood, California. The investigation has revealed no evidence that FastBox did any legitimate business. This has been confirmed by several cooperating defendants.

16. On April 11, 2020, a worker at the FastBox New York City location was

observed through electronic surveillance moving wooden FastBox crates from the FastBox NY warehouse into a third-party semi-tractor bearing New York plate 712157PC towing trailer bearing Maine licenses plate 2280450.

17. On April 13, 2020, the HSI Oklahoma City Task Force officer stopped the semi-tractor bearing New York plate 712157PC towing trailer bearing Maine licenses plate 2280450 after the semi was observed failing to maintain its lane of travel. After a canine alerted and indicated to the odor of narcotics coming from within the trailer, a probable cause search of the trailer, HSI discovered approximately $3.9 million of suspected narcotics proceeds secreted in one of the FastBox crates. The suspected narcotics proceeds were packaged and marked with different symbols and/or acronyms, which made your affiant believe the bulk currency belonged to different individuals.

18. On or about May 7, 2020, HSI executed multiple search warrants on FastBox locations, FastBox containers, FastBox employee's residence and FastBox storage units in California, Chicago, Cincinnati, Kansas City and New York. Pursuant to the warrants, HSI New York, HSI Cincinnati, HSI Chicago, HSI Kansas City and HSI California seized over 55,000 vials of Marijuana biproduct tetrahydrocannabinol (THC) vape pens, which is equivalent to approximately 3500 kilograms of dried leave marijuana and over $1.6 million of suspected narcotics proceeds. HSI also seized cell phones used by employees of the FastBox warehouses.

19. In May 2020, LSO conducted forensic analysis of the phones seized from members/employees of FastBox. Text messages and audio messages discovered during the analysis indicate FastBox members/employees were under the direction of David Max LEIDERMANN (W/M 3-12-75). Text conversations and audio clips were identified as belonging to LEIDERMANN based on voice comparisons and a third cooperating defendant (CD-3) who identified messages coming from LEIDERMANN. The messages gave instructions to FastBox members/employees on how shipments should be made and persons that could be trusted. Based on your affiant's training and experience and the stern tone of the messages, your affiant believes LEIDERMANN was in charge of the organization.

20. The analyzed text messages from the seized phones of FastBox members/employees along with subpoenaed bank records for FastBox bank accounts, indicated bulk cash of approximately $1.4 million were deposited by members/employees between 2017 and 2020. Members/ employees of the organization would deposit small, predetermined

amounts into FastBox accounts via ATM at multiple banks in the Los Angles California area.

21. Subpoenaed records for the third-party transportation companies used by FastBox LLC to ship FastBox crates indicated FastBox shipped approximately 247 loads from California between 2014 and 2020. The records also indicated FastBox LLC ship

368 loads to California between 2014 and 2020. To date the investigation has revealed no evidence that FastBox did any legitimate business. This has been confirmed by several cooperating defendants.

22. In May 2020, a second cooperating defendant (CD-2) who HSI has deemed credible and reliable confirmed that FastBox LLC began operations in 2014. CD-2 stated he was approached by LEIDERMANN and agreed to start FastBox in CD-2's name. CD-2 stated his job was to facilitate financial payments for all logistics for FastBox to maintain the appearance that FastBox was a legitimate moving company, but he soon realized after the company conducted no legitimate business and was used to transport narcotics and narcotic proceeds. CD-2 has met with LEIDERMANN on several occasions over six-year period. CD-2 identified a picture of LEIDERMANN as the person who asked CD-2 to start FastBox.

23. In May and June 2020, a third cooperating defendant (CD-3) who HSI has deemed credible and reliable, confirmed that FastBox LLC began operations in 2014 as a marijuana and marijuana byproduct delivery company. CD-3 also confirmed that LEIDERMANN and James Vincent REJA (W/M 06-25-1974) were partners in charge of the operation. CD-3 indicated THIBODO was a client of LEIDERMAN and REJA, who used the FastBox service to move marijuana and marijuana proceeds between California and the other FastBox locations. CD-3 identified pictures of LEIDERMAN, REJA, and THIBODO.

24. CD-3 stated that since 1998, he had been working with LEIDERMANN and REJA in various roles in the DTO. Originally CD-3 started working in marijuana grow locations in California tending to the growth of marijuana plans. Later, CD-3 moved to New York and started receiving large shipments of marijuana and marijuana products for delivery. CD-3 would then ship the money back to LA for LEIDERMAN and REJA. During this time CD-3 would contact LEIDERMANN and REJA for

instructions concerning the business. CD-3 stated that LEIDERMAN and REJA were equal partners but had different roles within the DTO. HSI Omaha recorded conversations between CD-3 and LEIDERMANN, and CD-3 and REJA, discussing the FastBox transportation business. CD-3 estimated LEIDERMANN and REJA produced over 1,000,000 pounds of marijuana between 1998 and 2014, the majority shipped to New York City. CD-3 estimated each bulk currency shipment from New York to California in the FastBox containers was at least $1,000,000. CD-3 indicated the container that was seized on April 13, 2020, was a larger shipment.

25. Between June and August 2020, CD-3 recorded consensually monitored calls between CD-3, REJA and LEIDERMANN discussing the seizures of bulk marijuana and marijuana proceeds. On one of those calls, LEIDERMANN discussed that law enforcement targeted FastBox after THIBODO was stopped with money in Nebraska. During the recorded calls, a meeting was scheduled where CD-3 was told that he was going to be paid this money for past work he had done for the organization.

26. On August 31, 2020, CD-3 met with LEIDERMANN and REJA in Los Angeles, California, and received approximately $150,000 in U.S. Currency. The meeting was recorded and monitored by HSI.

27. On July 1, 2020, investigators located a fourth cooperating defendant (CD-4), who HSI had deemed credible and reliable, who stated that he was paid $5,000 from THIBODO to drive from Chicago to the Papillion address with the marijuana that was subsequently seized on January 19, 2020.

Respectfully submitted,

_____
Craig Allrich,
Special Agent, Department of Homeland Security

Subscribed and sworn to before me via reliable electronic means on  April__11__, 2023.

_____
SUSAN M. BAZIS
United States Magistrate Judge
District of Nebraska